**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **HIGHPOINT RISK SERVICES, LLC,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:14-cv-3398-L |
| | § | |
| **COMPANION PROPERTY & CASUALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **DEFENDANT.** | § | |

---

**DEFENDANT'S MOTION TO TRANSFER VENUE AND BRIEF IN SUPPORT**
**(SUBJECT TO DEFENDANT'S MOTION TO DISMISS)**

---

D. Ronald Reneker, Attorney in Charge
Texas Bar No. 16770000
rreneker@munsch.com
John L. Thompson
Texas Bar No. 90001820
jthompson@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Tel: (214) 855-7500
Fax: (214) 855-7584

**ATTORNEYS FOR DEFENDANT**
**COMPANION PROPERTY AND**
**CASUALTY INSURANCE COMPANY**

**Dated:  October 16, 2014**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................1

II.     LEGAL STANDARD ................................................................................................2

III.    ARGUMENT ............................................................................................................3

   A.    With the Addition of Aspen Administrators, Inc. as a Necessary Party, This Case
      Should Be Transferred to the District of South Carolina Pursuant to § 1404(a).............3

   B.    Forum Selection Clauses and the Public Interest Factors Aside, the Private
      Interest Factors Also Weigh in Favor of Transferring This Case to the District of
      South Carolina Pursuant to § 1404(a) ........................................................................7

IV.     CONCLUSION ........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atlantic Marine Constr. Co., Inc. v. United States District Court for Western District of Texas*,
134 S. Ct. 568 (2013) ................................................................................................ 1, 3, 5

*Continental Grain Co. v The Barge FBL-585*,
364 U.S. 19 (1960) ...................................................................................................... 10

*DataTreasury Corp. v. First Data Corp.*,
243 F. Supp. 2d 591 (N.D. Tex. 2003) ........................................................................ 10

*Fin. Casualty & Surety, Inc. v. Zouvelos*,
No. H-11-2509, 2012 WL 2886861 (S.D. Tex. July 13, 2012) ..................................... 9

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
867 F. Supp. 2d 859 (E.D. Tex. 2012) .......................................................................... 7

*In re Atlantic Marine Constr. Co., Inc.*,
701 F.3d 736 (5th Cir. 2012) ........................................................................................ 4

*In re Greentech, Inc.*,
566 F.3d 1338 (5th Cir. 2009) .................................................................................... 7, 9

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) ........................................................................................ 2

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (5th Cir. 2009) .................................................................................... 11

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........................................................................................ 2

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
No. 2:09-CV-356, 2011 WL 1235354 (E.D. Tex. Mar. 30, 2011) ................................. 7

*Minka Lighting, Inc. v. Trans. Globe Imports, Inc.*,
No. 3:02-CV-2538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) .............................. 2

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) (Kennedy, J, concurring) ............................................................... 1

*Summit 6 LLC v. HTC Corp.*,
No. 7:14-cv-0014, 2014 WL 4449821 (N.D. Tex. Sept. 10, 2014) .............................. 10

*Sundance Leasing Co. v. Bingham*,
503 F. Supp. 139 (N.D. Tex. 1980) ............................................................................. 10

*The Whistler Grp., Inc. v. PNI Corp.*,
    No. 3:03-CV-1536, 2003 WL 22939214 (N.D. Tex. Dec. 5, 2003) ........................................ 10

*Travelers Indem. Co. of Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*,
    No. 3:02-CV-0585, 2002 WL 1575409 (N.D. Tex. July 16, 2002) ........................................... 9

*United States ex rel. J-Crew Mgmt., Inc. v. Atlantic Marine Constr. Co, Inc.*,
    No. A-12-CV-228, 2012 WL 8499879 (W.D. Tex. Aug. 6, 2012) ........................................... 4

*USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*,
    No. 3:10-CV-2466, 2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) .................................... 5, 6

## STATUTES

28 U.S.C. § 1391(b)(1) ........................................................................................................ 5

28 U.S.C. § 1404(a) ...................................................................................................passim

## RULES

Fed. R. Civ. P. 45(b)(2) ........................................................................................................ 8

Defendant Companion Property & Casualty Insurance Company moves the court, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the District of South Carolina, Columbia Division, and submits the following brief in support of its motion.  Defendant makes this motion subject to, and without waiving, its Motion to Dismiss and Brief in Support [Doc. 5] filed on September 26, 2014.

## I.    INTRODUCTION

1.    Plaintiff Highpoint Risk Services LLC ("Highpoint") and Defendant Companion Property & Casualty Insurance Company ("Companion") are parties to overlapping civil actions currently pending in two different federal district courts—the Northern District of Texas and the District of South Carolina.  The parties and claims in the instant case (the "Texas Action") are subsumed within a much more comprehensive action commenced in the District of South Carolina (the "South Carolina Action").  Transfer of the Texas Action to the District Court in South Carolina will allow for the consolidation of the two actions.  Transfer would not only be efficient and more convenient for the parties and witnesses, it also will conserve judicial resources and avoid duplicative litigation and potentially inconsistent results.

2.    A transfer to South Carolina not only makes sense under the traditional factors embedded in the federal transfer statute, 28 U.S.C. § 1404(a), but also is mandated by a South Carolina forum selection clause agreed to by the proper parties and their representatives. Once all necessary parties are joined in the Texas Action, the operation of the South Carolina forum selection clause essentially requires transfer to South Carolina.  Indeed, just last year the United States Supreme Court unanimously made clear that in the §1404(a) context, a forum selection clause must be "'given controlling weight in all but the most exceptional cases.'"  *Atlantic Marine Constr. Co., Inc. v. United States District Court for Western District of Texas*, 134 S. Ct. 568, 579 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J, concurring)).

## II.    LEGAL STANDARD

3.    Federal transfer law provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. §1404(a).  The purpose of this provision is to facilitate the transfer of actions to a more appropriate federal forum in order "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ."  *Minka Lighting, Inc. v. Trans. Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, *1 (N.D. Tex. May 23, 2003) (internal quotations omitted).  District courts are afforded wide discretion to transfer venue on an individualized, case-by-case basis.  *See id.* (citations omitted).

4.    In considering whether to transfer under § 1404(a), the preliminary issue a court must decide is whether the case "might have been brought" in the venue to which transfer is sought.  *See In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003).  If this threshold test is met, courts then balance various public and private interests, no one of which carries dispositive weight.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (citation omitted).  The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  *See id.* (citation omitted).  The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  *See id.* (citation omitted).

5.    When a contractual forum selection clause applies, however, the § 1404(a) analysis changes dramatically.  As recently explained by the Supreme Court, a forum selection clause negates any presumption in favor of venue in the transferor court, makes irrelevant the

private interest factors, and shifts the burden onto the non-moving party to prove that transfer is unwarranted. *Atlantic Marine Constr. Co., Inc.,* 134 S. Ct. at 579. While the district court must still consider the public § 1404(a) factors, the Supreme Court observed that those factors will "rarely defeat a transfer motion" in the face of a forum selection clause. *Id.* at 582.

## III.   ARGUMENT

**A.   With the Addition of Aspen Administrators, Inc. as a Necessary Party, This Case Should Be Transferred to the District of South Carolina Pursuant to § 1404(a)**

6.     As explained in Companion's motion for an order under Rule 19(a) to require joinder of a necessary party, once this Court orders the addition of Aspen Administrators, Inc. ("Aspen") as a party plaintiff, this case should be transferred to the District of South Carolina, Columbia Division, where a comprehensive action is now pending. This is because Companion and Charles David Wood, Jr. ("Wood"), who owns and controls Aspen as well as the lone named plaintiff, Highpoint, executed several agreements with forum selection clauses specifying that all disputes between them will be litigated in one location—the courts in Richland County, South Carolina, where the Columbia Division of the United States District Court for the District of South Carolina sits.

7.     There are at least three relevant contracts that mandate South Carolina venue:

- The Coverage Agreement executed by Wood on December 1, 2006, which states that the state and federal courts of Richland County, South Carolina would be the exclusive forum for litigating any dispute connected to the Coverage Agreement. *See* Exh. A ("Coverage Agmt.") at ¶ 22 [Appx. at 19].[1] The Coverage Agreement references Companion's relationship to both Highpoint and Aspen. *See id.* at ¶¶ 10, 12 [Appx. at 17].

- The Guaranty and Indemnity Agreement executed by Wood on December 1, 2006, which provides that the state and federal courts of Richland County, South Carolina would be the exclusive forum for litigating any dispute connected to the Guaranty and Indemnity Agreement. *See* Exh. B ("Guaranty and Indemnity Agmt.") at IX ¶ I [Appx. at 28]. Pursuant to this guarantee, Wood promised to hold Companion harmless for any obligations for the performance of any obligation mentioned in the Coverage Agreement, including any obligations of Highpoint or Aspen. *See id.* at II ¶ A [Appx. at 24].

---

[1] The Exhibits referenced in this motion are included in the accompanying Appendix ("Appx."), which includes:  (i) Declaration of Harry Lee, and Exhibits thereto; and (ii) Declaration of Jennifer Adams.

3

- The Third Party Claims Administration Agreement executed by Wood on Aspen's behalf on December 1, 2006, says that Aspen agreed that the state and federal courts of Richland County, South Carolina would be the exclusive forum for litigating any dispute connected to claims administration, which is at the heart of Highpoint's Complaint. *See* Exh. C ("Third Party Agmt.") at Article IX [Appx. at 36].

These provisions leave no doubt that the parties bargained to have all disputes litigated in Columbia, South Carolina, and nowhere else. Once this case is transferred to the agreed South Carolina venue, it no doubt will be consolidated with the federal case now pending there. That action includes all of the parties and disputes at issue in the Texas Action.

8.      The need to transfer this case was clarified and reinforced just last year by the United States Supreme Court. In *Atlantic Marine Construction Co.*, the Supreme Court considered whether to maintain a breach of contract case between a Texas general contractor and a Virginia subcontractor regarding non-payment. The parties' contract contained a forum selection clause requiring that disputes be litigated in Virginia. The subcontractor moved to dismiss the Texas action under Rule 12(b)(3) for improper venue, and in the alternative moved to transfer the action to the Eastern District of Virginia under § 1404, the federal transfer statute. The Texas district court refused to dismiss or transfer. With respect to the transfer aspect of the motion, the district court held that despite the existence of a Virginia forum selection clause, (i) the subcontractor had the burden to prove that the traditional private and public interest factors for transfer were met, and (ii) the existence of a forum selection clause would be considered just one such factor. Weighing all the factors, the Texas district court refused to transfer the case to Virginia. *See United States ex rel. J-Crew Mgmt., Inc. v. Atlantic Marine Constr. Co, Inc.*, No. A-12-CV-228, 2012 WL 8499879, *8 (W.D. Tex. Aug. 6, 2012). The Fifth Circuit denied the subcontractor's mandamus petition. *See In re Atlantic Marine Constr. Co., Inc.*, 701 F.3d 736, 743 (5th Cir. 2012).

9.      The Supreme Court granted certiorari, reversed and remanded. The Court agreed that dismissal under Rule 12(b)(3) for "improper" venue was not appropriate, but ruled unanimously that forum selection clauses are to be enforced via § 1404, and that "a district

court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *In re Atlantic Marine,* 134 S. Ct. at 575.  The Court made clear that a forum selection clause must be "'given controlling weight in all but the most exceptional cases.'"  *Id.* at 579 (citation omitted).  The Court instructed that where a forum selection clause exists, (i) the presumption in favor of venue in the transferor court is negated, (ii) the private interest factors usually considered by a district court are to be ignored, and (iii) the party seeking to prevent transfer bears the burden of proving why transfer should not occur in the face of an agreed forum selection clause.  *See id.* at 581-82.  The Court also noted that while evaluation of the traditional public interest factors should still occur, those factors will "rarely defeat a transfer motion[.]"  *Id.* at 582.  Observing that "no public-interest factors that might support the denial of [the] motion to transfer are apparent on the record before us," *id.* at 584, the Court nevertheless remanded the case to the district court for consideration of the public interest factors in the proper light.

10.     Here, transfer is mandated by the existence of clear forum selection clauses requiring litigation in Columbia, South Carolina.  As would be expected, none of the public factors point to any other outcome, let alone amount to the type of "most exceptional" case that would warrant denial of transfer.  For the sake of completeness, those public interest factors are analyzed immediately below.[2]

11.     *First*, regarding the administrative difficulties flowing from court congestion, "courts commonly consider the Federal Judicial caseload statistics."  *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, No. 3:10-CV-2466, 2011 WL 1103372, *5 (N.D. Tex. Mar. 25, 2011) (citation omitted).  When analyzing this factor, "'the real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court

---

[2] As a preliminary matter, because this case "might have been brought" in the District of South Carolina, the threshold jurisdictional requirement is satisfied.  28 U.S.C. § 1404(a).  Companion is a South Carolina corporation, and, under the applicable venue statutes, a diversity action may be brought in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]"  28 U.S.C. § 1391(b)(1).

because of its less crowded docket.'" *Id.* (quotation omitted).   According to federal judicial caseload statistics reported by the Administrative Office of the United States Courts, during the 12-month period ending on March 31, 2013, the Northern District of Texas and the District of South Carolina handled and disposed of a comparable number of civil cases.  This factor does not favor either side.  *See id.*

12.     *Second*, regarding the local interest in the dispute, "'[t]his factor generally favors the venue where the acts giving rise to the lawsuit occurred.'"  *Id.* at *6 (quotation omitted).  In this case, as discussed previously, all relevant parties purposefully availed themselves of South Carolina's laws and regulations by doing substantial business with Companion, a South Carolina corporation, and by expressly subjecting themselves and their businesses to South Carolina law.  Moreover, Highpoint and Aspen are licensed in South Carolina, and regularly solicited insurance business in South Carolina.  The other interested entities (most of which are now parties to the comprehensive South Carolina Action) have little, if any, connection to Texas.[3]  This factor thus weighs in favor of transfer, because it will allow the Texas Action to be consolidated with the comprehensive South Carolina Action and allow South Carolina citizens to resolve a dispute involving one of the state's biggest employers.

13.     The *third* and *fourth* factors—regarding the familiarity of the forum with the law governing the case and the interest in avoiding unnecessary problems with conflict of laws—are related considerations.  Transferring this case to South Carolina would not create a conflict of laws or require the court to apply the unfamiliar law of another state.  To the contrary, the agreements between the parties contain choice of law provisions that mandate the application of South Carolina law to this dispute.  *See* Coverage Agmt. at ¶ 21 [Appx. at 19]; Guaranty and Indemnity Agmt. at IX ¶ H [Appx. at 27]; Third Party Agmt. at Article X, ¶ F [Appx. at 38].

---

[3]  Personnel Advantage East, Inc. was formed under the laws of Florida; Equity Group Leasing I, Inc. was formed under the laws of Florida; AMS Staff Leasing, Inc. d/b/a AMS Staff Leasing Corporation is organized and existing under the laws of Florida; Breckenridge Enterprises, Inc. is organized and existing under the laws of Texas; and AMS Staff Leasing II, Inc. is organized and existing under the laws of Florida.

Accordingly, these factors also weigh in favor of transfer.

**B.      Forum Selection Clauses and the Public Interest Factors Aside, the Private Interest Factors Also Weigh in Favor of Transferring This Case to the District of South Carolina Pursuant to § 1404(a)**

14.     Even if the Court finds that Aspen is not a necessary party to the Texas Action, and thus that the cited forum selections clauses do not apply, the Court should nonetheless transfer venue to the District of South Carolina pursuant to 28 U.S.C. § 1404(a) because the private interest factors also weigh in favor of transfer.

15.     *First*, regarding the relative ease of access to sources of proof, "this factor almost invariably turns on which party will most likely have the greater volume of relevant documents and their presumed physical location in relation to the venues under consideration." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 869 (E.D. Tex. 2012).  In this case, voluminous records and other evidentiary materials are maintained in South Carolina, not Texas.  *See* Declaration of Jennifer Adams ("Adams. Decl.") at ¶ 29 [Appx. at 9].  Highpoint produced approximately 8,400 "PayGo" insurance policies—the shorthand name for some of the business produced by Highpoint on Companion insurance policies—and has experienced thousands of claims under those policies.  *See id.* at ¶¶ 5, 29 [Appx. at 4, 9].  As a result of the size and scope of the program, Companion maintains countless volumes of records in Columbia, South Carolina in both hardcopy and electronic format.  *See id.* at ¶ 29 [Appx. at 9]. These materials include claim files, policy records, invoices, audit records, underwriting files, bordereaux reports, regulatory filings, agency appointments, financial reports and compilations, actuarial analysis, email correspondence, billing records, and investigatory records.  *See id.* "Even in the age of electronic discovery, considerations of physical evidence remain meaningful in § 1404(a) analysis." *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 2:09-CV-356, 2011 WL 1235354, *4 (E.D. Tex. Mar. 30, 2011) (citation omitted).  Both parties, therefore, would have easier access to documents and other sources of proof in South Carolina rather than Texas.  *See In re Greentech, Inc.*, 566 F.3d 1338, 1348 (5th Cir. 2009) (explaining

that because "two of the three parties are either headquartered in the transferee venue or have facilities in San Diego, California," transferring venue to California "would reduce significantly any transportation of documents relating to the accused products.").

16.     *Second*, the availability of compulsory process to secure the attendance of witnesses also weighs in favor of transfer because the parties will likely be forced to subpoena nonparty witnesses who reside in South Carolina, which is beyond the reach of this Court's subpoena power.  *See* Fed. R. Civ. P. 45(b)(2).  These individuals include Curtis Stewart, Matt Reynolds, Bob Shyrock, Curt Docktor, Rex Boylston, and Phil Segui.  Mr. Stewart is a former officer and employee of Companion who, from 2005 until in or around May 2011, was Companion's Chief Financial Officer.  *See* Adams Decl. at ¶ 16 [Appx. at 6].  He was involved in regular communication with Mr. Wood regarding the establishment and operation of Wood's insurance-related companies.  *See id.*  Mr. Reynolds is a former Companion employee who led Companion's investigation into Highpoint-produced business amid financial concerns regarding Wood's companies and overall program.  *See id.* at ¶ 21 [Appx. at 7].  Mr. Shyrock is a former employee of Companion who oversaw loss prevention and loss control at the company, and also helped establish Companion's loss prevention programs for the PayGo business that Highpoint produced.  *See id.*  Rex Boylston was Companion's Director of Business Development until approximately May 2011.  *See id.* at ¶ 17 [Appx. at 6].  Mr. Boylston worked closely with Mr. Steward and Wood in establishing the combined operation of Wood's companies, including the PayGo portion of the program.  *See id.*  Mr. Segui is a former employee of Companion who, at one point, was the company's Director of Underwriting.  *See id.* at ¶ 18 [Appx. at 7].  In that capacity, Mr. Segui worked with Highpoint on creating the underwriting guidelines for the PayGo portion of Wood's operation and later performed underwriting audits of the program.  *See id.*  Given these individuals' background and knowledge on issues that are central to the proper resolution of this case, they will almost certainly be called to testify.  Because these nonparty witnesses are located in South Carolina,

not Texas, this factor weighs in favor of transfer.  *See Fin. Casualty & Surety, Inc. v. Zouvelos*, No. H-11-2509, 2012 WL 2886861, *6 (S.D. Tex. July 13, 2012).

17.    *Third*, regarding the cost of attendance for willing witnesses, numerous individuals with critical knowledge of the issues underlying this dispute reside in South Carolina. These individuals include Jennifer Adams, Josh Livingston, Kevin Elmore, Parker Moore, Michael Downs, Heather Crosby, Linda Taylor, Endia Thompson, Dawn Williams, Laurie Comfort, Pam Bass, Tom Walsh, Deborah Gunter, Marilyn Ramos, Christina Wania, Jeri Boysia, Xuan Li, Zach Alford, Carrie Caudle, Rosa Hipolito, Jennifer Thorne, Laura Simpson, Joe Lapaglia, Scott Sendler, Thomas Kassekert, Troy Santora, Doris Morton, Kenyatta Miller, Gordon Dobson Jr., Gordon Dobson Sr., and Bill Merton.  Details of these individuals' roles and responsibilities in relation to the issues surrounding the compensation insurance reimbursement controversy between Highpoint and Companion are set forth in the accompanying Declaration of Jennifer Adams.  *See* Adams Decl. at ¶¶ 6-7, 9-15, 19-20, 25-28 [Appx. at 4-9].  These witnesses would be greatly inconvenienced by trial in Texas.  Conversely, other than Wood, very few witnesses reside in Texas.  Although no one factor is given dispositive weight, the convenience of witnesses is often considered the most important private factor for purposes of determining whether a case should be transferred under § 1404(a).  *See Travelers Indem. Co. of Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, No. 3:02-CV-0585, 2002 WL 1575409, *2 (N.D. Tex. July 16, 2002) (citations omitted).  The testimony of these prospective witnesses is critical to the resolution of this case; and, given the number of witnesses that reside in South Carolina compared to any potential Texas witnesses, the burden and expense of requiring them to travel to Texas would be far greater than it would be if this case were heard in South Carolina as part of the comprehensive South Carolina Action.  *See In re Genentech*, 566 F.3d at 1348 (reversing denial of venue transfer from Texas to California due, in part, to "a substantial number of witnesses with material and relevant information residing in either the transferee venue or the state of California who will be unnecessarily inconvenienced in having

9

to travel to Texas to testify.").

18.     *Fourth*, all of the "other practical problems that would make trial easy, expeditions and inexpensive" weigh in favor of transferring this case to the District of South Carolina, because a transfer would almost certainly accomplish consolidating the Texas Action with the more comprehensive South Carolina Action.   The main purpose underlying §1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"   *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014, 2014 WL 4449821, *4 (N.D. Tex. Sept. 10, 2014) (quotation omitted).   Here, transfer would accomplish all of these things and promote judicial economy, which plays a "'paramount role'" in § 1404(a) jurisprudence.   *See id.* (quotation omitted).   Given the existence of the comprehensive South Carolina Action, a transfer would consolidate the two cases and avoid duplicative litigation and potentially inconsistent results.   "Transfer is particularly appropriate where related cases involving the same issues are pending in another court."   *DataTreasury Corp. v. First Data Corp.,* 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (citation omitted); *see also The Whistler Grp., Inc. v. PNI Corp.*, No. 3:03-CV-1536, 2003 WL 22939214, *5 (N.D. Tex. Dec. 5, 2003) ("Because the California and Texas litigations involve overlapping core issues, common subject matter, and closely related questions, this Texas litigation should be transferred to the Northern District of California." (citations omitted)); *Sundance Leasing Co. v. Bingham*, 503 F. Supp. 139, 140 (N.D. Tex. 1980) ("Considerations of judicial economy and efficiency clearly support a policy of having substantially similar matters litigated before the same tribunal."); *Continental Grain Co. v The Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

19.     Taken individually and cumulatively, the private factors weigh in favor of transferring venue from the Northern District of Texas to the District of South Carolina.   *See,*

*e.g.*, *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (5th Cir. 2009) ("This court has held and holds again in this instance that in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." (citations omitted)).

### IV.   CONCLUSION

20.     In the event that this case is not dismissed, this action should be transferred to the federal court in Columbia, South Carolina under 28 U.S.C. § 1404(a)—where the relevant contracts mandate venue, where Companion is based, where all of the parties have significant ties, and where most of the significant events, witnesses, and evidence are located.

**Dated: October 16, 2014**

Respectfully submitted,

/s/ D. Ronald Reneker
D. Ronald Reneker, Attorney in Charge
Texas Bar No. 16770000
rreneker@munsch.com
John L. Thompson
Texas Bar No. 90001820
jthompson@munsch.com

**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Tel: (214) 855-7500
Fax: (214) 855-7584

**ATTORNEYS FOR DEFENDANT
COMPANION PROPERTY AND
CASUALTY INSURANCE COMPANY**

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 16, 2014, I discussed the basis of this motion with Messrs. Gardner and Haas, who advised that they opposed the requested transfer.

/s/ John L. Thompson
John L. Thompson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by means of CM/ECF E-SERVICE this 16th day of October, 2014.

/s/ D. Ronald Reneker
D. Ronald Reneker

12