**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HIGHPOINT RISK SERVICES LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-3398-L(BH) |
| | § | |
| **COMPANION PROPERTY &** | § | |
| **CASUALTY INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the order of reference dated January 9, 2015 (doc. 21), before the Court for recommendation are *Defendant's Motion to Dismiss and Brief in Support*, filed September 26, 2014 (doc. 5)*,* and *Defendant's Motion for Order Requiring Joinder of Party Plaintiff, and Brief in Support (Subject to Defendant's Motion to Dismiss)*, filed October 16, 2014 (doc. 6).  Based on the relevant filings and applicable law, the motion to dismiss should be **DENIED,** and the motion for an order requiring joinder of a party plaintiff should be **GRANTED**.

**I.  BACKGROUND**

This case arises out of an alleged agency relationship between Highpoint Risk Services LLC (Plaintiff) and Companion Property & Casualty Insurance Company (Defendant).  Plaintiff is a licensed insurance agency that solicits business in several states, including Texas, for insurers providing various types of coverage, such as workers' compensation and employer's liability insurance. (doc. 1-1 at 5.) It  contends that Defendant is a multiple-line insurer that offers its products through an independent agency system. (*Id*.) Defendant partners with licensed agents who are authorized to issue its "insurance policies to, collect premiums from, and pay claims submitted by customers." (*Id*.)

On September 19, 2014, Plaintiff sued Defendant in state court, alleging that Defendant authorized it to serve as its agent with respect to a line of "pay as you go" or "PayGo" workers' compensation insurance policies. (*Id*. at 3, 5.) Unlike traditional workers' compensation policies, the premiums for these policies are calculated based on a company's actual payroll and paid at the end of each pay period. (*Id*.) Plaintiff issued PayGo workers' compensation and employer's liability insurance policies to employers on Defendant's policy form. (*Id*. at 6.) The information page of the PayGo policies allegedly identifies Defendant as the named insurer and Plaintiff as Defendant's agent. (*Id*.) Defendant filed agency appointments with regulators designating Plaintiff as its agent in several states, including Texas. (*Id*.) Plaintiff contends that Defendant is required to promptly pay workers' compensation benefits as the named insurer under the PayGo policies. (*Id*.)

Defendant allegedly obtained reinsurance for the PayGo policies in order to offset some of the risk associated with its PayGo program. (*Id*.) Plaintiff contends that although Defendant regularly engages in reinsurance ceding transactions, the ceding of insurance does not discharge it from its primary liability to policyholders. (*Id*.) Defendant entered into a reinsurance agreement with Redwood Reinsurance SPC, Ltd. (Redwood), pursuant to which it ceded a portion of its gross liability under the PayGo program to Redwood. (*Id*. at 6-7.) Specifically, the agreement provided that Defendant would "cede and [Redwood] shall accept a 100% Quota Share of ... [Defendant's] [g]ross liability" under the PayGo policies. (*Id*. at 7.) Plaintiff argues that Defendant received a "ceding commission allowance" in the amount of 31.7% on all PayGo policies subject to the reinsurance agreement. (*Id*.) The commission included a six percent "fronting fee", which was paid to Defendant on each policy. (*Id*.) Additionally, pursuant to the reinsurance agreement, it was

2

agreed and understood that Defendant would be fully collateralized for all liabilities arising under the agreement. (*Id.*)

Plaintiff contends that it collected premiums, distributed commissions, and funded a claims payment account on behalf of Defendant. (*Id.* at 9-10.) Defendant used Aspen Administrators, Inc. (Aspen), a third-party administrator based in Dallas, Texas, to process and manage claims. (*Id.* at 10.) Aspen was also responsible for the payment of claims from an account funded by Plaintiff. (*Id.*) According to Plaintiff, Aspen handled the initial intake when an insured made a claim, and it also served as the designated third-party administer for processing and adjusting claims for certain states. (*Id.*) Once the third-party administrator approved a claim for payment, Plaintiff, as Defendant's agent, would advance the funds required to pay the claim to the claims payment account, and Aspen would disburse the funds needed to satisfy the claim. (*Id.*) Plaintiff asserts that on a monthly basis, it would send Defendant a "report showing, among other things, the amount of premium collected, the amount of commissions distributed, and the amount of claims paid under the PayGo Policies." (*Id.*) Plaintiff asserts that its relationship with Defendant and the PayGo program continued for a number of years. (*Id.*) For example, "between October 2010 and December 2012, [Plaintiff] remitted over $17 million in premium fronting fees to [Defendant] for the issuance of PayGo Policies, and [Plaintiff] advanced (and was subsequently reimbursed for) over $63 million for claims paid on [Defendant's] behalf." (*Id.*)

Plaintiff alleges that from January 2013 until June 2013, it funded over $38 million in individual claims payments on Defendant's behalf, and it remitted over $4.5 million in premium fronting fees to Defendant. (*Id.*) Plaintiff contends that on July 2, 2013, Defendant "abruptly" terminated their relationship and demanded that Plaintiff cease and desist all origination, enrollment,

3

and other activities associated with issuing policies. (*Id*.)

In 2014, Defendant allegedly terminated the reinsurance agreement with Redwood and released it from its reinsurance obligations. (*Id*. at 11.) Plaintiff asserts that as a result of the termination, Defendant assumed Redwood's liabilities and obtained assets previously held by Redwood to secure the payment of claims under the PayGo policies. (*Id*.) By letter dated April 1, 2014, Plaintiff's counsel provided Defendant with a list of claims it paid on its behalf from January 2013 until June 2013, but Defendant refused to reimburse it. (*Id*.)

Based on Plaintiff's alleged entitlement to reimbursement for the amounts expended as Defendant's agent, it alleges causes of actions against Defendant for assumpsit, common law indemnification, equitable subrogation, and breach of implied contract. (*Id*. at 11-14.) It seeks actual, compensatory, and consequential damages, attorneys' fees, pre-and post judgment interest, and court costs. (*Id*. at 15.)

On September 9, 2014, Defendant removed the action to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1.) On September 26, 2014, it moved to dismiss the case. (doc. 5.) Subsequently, on October 16, 2014, it moved for an order requiring joinder of a party plaintiff. (doc. 6.)

## II. MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that Plaintiff alleges no facts to establish that it was authorized to fund the payment of insurance claims, only that it did so as Defendant's agent. (doc. 5 at 5.)

**A.** **Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can

be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The alleged facts must "raise a right to relief above the speculative level." *Id*. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950–51.

**B.**     **Agency Relationship**

Defendant argues that each of Plaintiff's five causes of action assumes the existence of a principal-agent relationship for the funding of an account to pay insurance claims. (doc. 5 at 2.) It contends that Plaintiff does not allege facts to support its legal conclusion that it was acting within the scope of any principal-agent relationship relating to the administration and payment of insurance claims for Defendant. (*Id*. at 6.) At best, according to Defendant, the facts alleged in the complaint support an inference that Plaintiff acted as its producing agent for the purpose of selling, issuing, and/or underwriting certain insurance policies, but Plaintiff does not allege that it engaged or authorized Plaintiff to adjust or fund insurance claims and payments. (*Id*.)

According to Texas law[1], "[a]gency is the consensual relationship between two parties when one, the agent, acts on behalf of the other, the principal, and is subject to the principal's control." *Indian Harbor Ins. Co. v. Valley Forge Ins. Group*, 535 F.3d 359, 364 (5th Cir. 2008)(citing *Happy Indus. Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex. App.–Corpus Christi 1998, pet. dism'd w.o.j.)). The existence of an agency relationship may be established by showing "that the principal has both the right: (1) to assign the agent's task; and (2) to control the means and details of the process by which the agent will accomplish that task." *Id*. The principal does not have to expressly appoint the agent or assent to the arrangement; the relationship can be implied by the parties' conduct under certain circumstances. *Schakosky v. Client Services, Inc.*, 634 F.Supp.2d 732, 735. A principal's conduct can create either actual or apparent authority for an agent to bind the principal. *Id*. Actual authority exists when the principal's conduct communicates to the agent that

---

[1] Both parties rely on Texas law to support their respective positions regarding an agency relationship between them.

it has authority to act on its behalf. *Id*. Conversely, apparent authority exists when the principal's conduct communicates to a third party that the agent has the authority to act on the principal's behalf. *Id*. The principal must have affirmatively held the agent out as possessing authority, or it must have knowingly and voluntarily permitted the agent to act in the unauthorized manner. *Huynh v. Nguyen*, 180 S.W.3d 608, 623 (Tex. App.–Houston [14th Dist.] 2005, no pet.).

If an agent acts without authority, the principal can ratify the authorized act, and it is then bound as if the agent had initially acted with the principal's authority. *Schakosky,* 634 F.Supp.2d at 735. Ratification does not need to be shown by an express act but can be inferred by the party's course of conduct. *See id.* It can occur if the principal retains the benefits of a transaction after acquiring full knowledge of the agent's unauthorized act. *Id*. at 735-36. "Of critical importance is the principal's knowledge of the transaction and his actions in light of such knowledge." *Id*.

Here, Plaintiff's complaint alleges that it issued PayGo workers' compensation and employer's liability insurance policies on Defendant's policy forms. (doc. 1-1 at 6.) The "information page" of the PayGo policies identifies Defendant as the named insurer and Plaintiff as Defendant's agent. (*Id*.) Plaintiff also contends that Defendant filed agency appointments with regulators designating Plaintiff as its agent in Texas and other states. (*Id*.) On a monthly basis, Plaintiff would send Defendant a report showing the amount of premiums collected, the amount of commissions distributed, and the amount of claims paid under the PayGo policies. (*Id*.) Additionally, according to Plaintiff, it remitted over $17 million in premium fronting fees to Defendant, and it advanced and was reimbursed for over $63 million for claims paid on Defendant's behalf. (*Id*.)

Plaintiff's allegations regarding Defendant's identification of Plaintiff as its agent on the

7

"information page" of the PayGo policies and with state regulators sufficiently alleges that Plaintiff had apparent authority to act for Defendant, at least with respect to issuing the PayGo policies. Plaintiff's allegations that it provided notice on a monthly basis to Defendant of its actions regarding collection of premiums and payment of claims sufficiently alleges that Defendant voluntarily permitted Plaintiff to engage in such actions with apparent authority. *See Huynh*, 180 S.W.3d at 623. The allegations also sufficiently allege that Defendant ratified Plaintiff's actions, to the extent Plaintiff acted without authority. Plaintiff alleges that Defendant knew it was collecting premiums and funding the payment of claims, and allowed it to do so for a number of years.[2] Taking these well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, as required under Rule 12(b)(6), *see Baker*, 75 F.3d at 196, Plaintiff has sufficiently stated a claim that it was acting within the scope of a principal-agent relationship relating to the administration and payment of insurance claims on Defendant's behalf based on apparent authority and ratification.

**C.     Adjuster License**

In support of its contention that Plaintiff alleges no facts to establish that Defendant authorized it to fund payment of insurance claims, Defendant also argues that according to the Texas Insurance Code, subject to inapplicable exceptions, a person may not act or represent that it is an adjuster in Texas unless it holds a license. (doc. 5 at 7.) It contends that the complaint lacks any factual allegation that Defendant was appropriately licensed in Texas or that Plaintiff adjusted Defendant's claims. (*Id.*)

The lack of an allegation regarding Plaintiff being "appropriately" licensed or adjusting

---

[2] Plaintiff also alleges that it was reimbursed for years for over $63 million that it advanced for claims paid on Defendant's behalf. (*See* doc. 1-1 at 10.) It does not allege that Defendant reimbursed it, so this allegation does not factor into the analysis regarding apparent authority and ratification.

8

Defendant's claims does not take away from the sufficiency of Plaintiff's allegations that it paid claims on Defendant's behalf pursuant to an agency relationship between it and Defendant. Plaintiff's alleged facts must "raise a right to relief above the speculative level," and it must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Here, Plaintiff has alleged that it was licensed in Texas. (*See* doc. 5 at 1.) Also, as outlined above, Plaintiffs' allegations that it was authorized by Defendant via an agency relationship to fund claims on its behalf state enough facts to raise a right to relief above the speculative level. Additionally, Plaintiff alleges that Aspen adjusted the claims, and that Plaintiff advanced the funds required to pay the claims. Finally, Plaintiff did, in fact, allege that it was a licensed insurance agency in Texas. (*See* doc. 1-1 at 5.) Defendant's argument fails.

### D.     Redwood's Liability for Payments of Claims under the PayGo Policies

Finally, Defendant argues that based on Plaintiff's allegations that the purported claims at issue were 100% re-insured by Redwood and that Redwood bore the liability for any claim payment, it is equally possible that any funds allegedly advanced by Defendant to Aspen were the result of an existing relationship with Aspen and/or Redwood. (doc. 5 at 7.) It then asserts that where a plaintiff's contentions are just as consistent with a lack of liability as they are with liability, the plaintiff has failed to state a claim. (*Id*.)

In addition to alleging that Defendant ceded a 100% quota share of its gross liability to Redwood under any of its policies, Plaintiff also alleges that Defendant remained primarily liable to policyholders for payment of claims pursuant to the reinsurance agreement. (*Id*. at 7.) It further argues that Defendant terminated the reinsurance agreement with Redwood in 2014, and Defendant then assumed Redwood's liabilities and obtained assets previously held by Redwood to secure

payment of the claims under the PayGo policies. (*Id.* at 7, 11.) Based on Plaintiff's allegations, Defendant, not Redwood, is liable under the PayGo policies. Again, taking Plaintiff's allegations as true and viewing them in the light most favorable to Plaintiff as required by Rule 12(b)(6), Defendant has not shown that Plaintiff's allegations regarding Redwood are "just as consistent with a lack of liability as they are with liability", or that Plaintiff failed to state a claim based on its allegations regarding Redwood.[3] The motion to dismiss should be denied.

### III. MOTION FOR ORDER REQUIRING JOINDER OF PARTY

Defendant moves to join Aspen as a party plaintiff in this action pursuant to Fed. R. Civ. P. 19(a)(1)[4]. (*See* doc. 6.) It argues that given Aspen's central role in the payment process and its legal interest in Defendant's reimbursement of claims payments, Aspen is a required party under Rule 19(a)(1). (*Id.* at 6-13.) It also argues that joinder is feasible because Aspen, a Florida company headquartered in Texas, will be subject to any service of process issued by the Court. (*Id.* at 14.) Also, its joinder will not deprive the court of subject matter jurisdiction as diversity jurisdiction will

---

[3]In its reply, Defendant argues that Plaintiff has not pled facts sufficient to state a claim as to each cause of action. (*See* doc. 13 at 5-8.) Because it only briefed its claim that Plaintiff's complaint should be dismissed for failure to adequately plead that Defendant authorized Plaintiff to adjust or fund insurance claims and payments, Plaintiff did not have an opportunity to respond to its arguments for dismissal of each claim. *See Pennsylvania Gen. Ins. Co. v. Story*, No. 3:03-cv-0330-G, 2003 WL 21435511, at *1 (N.D.Tex. June 10, 2003)("[A] court generally will not consider arguments raised for the first time in a reply brief."). Those arguments were therefore not considered.

[4]Fed. R. Civ. P. 19(a)(1) states:
**(a) Persons Required to Be Joined if Feasible.**
    **(1)** *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
        **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
        **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
            **(i)** as a practical matter impair or impede the person's ability to protect the interest; or
            **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

remain intact.[5] (*Id.*) Plaintiff does not oppose an order requiring Aspen to be joined as a party plaintiff. (*See* doc. 14.) Accordingly, the unopposed motion should be granted.

### IV. RECOMMENDATION

Defendant's motion to dismiss should be **DENIED**, and its motion for an order requiring joinder of a party plaintiff should be **GRANTED**.

**SO RECOMMENDED** on this 24th day of August, 2015.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5]Aspen is a citizen of Florida and Texas, Plaintiff is a citizen of Texas, and Defendant is a citizen of South Carolina. (*See* doc. 1 at 2; doc. 7 at 9-29.)

11